UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAIMON STRODERD AND JOSEPH RICHARD, JR. ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED | * | CIVIL ACTION |
| | * | NUMBER 04-3040 |
| V. | | |
| | * | SECTION "L"(4) |
| YAMAHA MOTOR CORPORATION, U.S.A. | | |

**ORDER AND REASONS**

Before the Court is the motion of Defendant Yamaha Motor Corporation, U.S.A. to dismiss with prejudice claims filed against it by Plaintiffs Daimon Stroderd and Joseph Richard, Jr. For the following reasons, Defendant's motion is GRANTED in part and DENIED in part.

I. BACKGROUND

In October and November 2002, Plaintiffs Daimon Stroderd and Joseph Richard, Jr. ("Plaintiffs") each purchased Yamaha Road Star Warrior motorcycles for approximately $10,000. On January 9, 2004, Defendant Yamaha Motor Corporation U.S.A. ("Defendant") issued a "Safety Recall Notice" to all owners of 2002 and 2003 Yamaha Road Star Warrior motorcycles. Defendant intended to use the recall to repair potential transmission failure in the motorcycles due to excessive wear.

The recall instructed Yamaha Road Star Warrior owners to stop using their motorcycles and to bring them in to an authorized dealer for repair at Yamaha's expense. The recall notice advised that the motorcycles would be kept in the repair shop for at least two days. Plaintiffs

allege that the repairs took four to six months.

Plaintiffs filed suit in Louisiana state court on April 23, 2004 and sought class certification. Plaintiffs seek actual, consequential, and incidental damages relating to the cost of alternative transportation, loss of use, inconvenience, and diminution of value due to the defect and delay in repair. Plaintiffs base their complaint on four legal theories: redhibition, breach of contract, negligent repair, and the Louisiana Products Liability Act (hereinafter "LPLA" or "the Act"). On November 8, 2004, Defendant removed the case to this Court based upon diversity of citizenship.

## II. MOTION OF THE DEFENDANT TO DISMISS PLAINTIFFS' CLAIMS

On April 15, 2005, Defendant filed a motion to dismiss all of the Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6). Defendant moves to dismiss Plaintiffs' negligent repair and the breach of contract claims based on the exclusivity provisions of the LPLA. Defendant moves to dismiss Plaintiffs' redhibition claim, arguing that Louisiana redhibition law requires a defect to have manifested itself. Defendant also alleges that Plaintiffs' redhibition claim is too speculative to survive a Rule 12(b)(6) motion. Defendant moves to dismiss Plaintiffs' products liability claim, alleging that Plaintiffs have failed to satisfy either prong of the two-prong test required under Louisiana law.  Finally, Defendant contends that the National Traffic and Motor Vehicle Safety Act ("Safety Act"), 49 U.S.C. § 30101 *et seq.*, bars Plaintiffs from asserting causes of action arising from a motor vehicle recall.

III. LAW & ANALYSIS

*A. Legal Standard for Motion to Dismiss*

The Federal Rules of Civil Procedure permit a defendant to seek dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), a district court should construe the complaint liberally in favor of the plaintiff, assuming all factual allegations to be true. *See Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999). Rule 12(b)(6) motions are viewed with disfavor and are rarely granted. *See id.* A complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).

*B. Plaintiffs' Negligent Repair and Breach of Contract Claims*

Defendant moves to dismiss Plaintiffs' negligent repair and breach of contract claims. The core of Defendant's argument is that the LPLA subsumes all possible causes of action, with the exception of redhibition, against a manufacturer for damage caused by the manufacturer's products. The Court agrees with Defendant.

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La.Rev.Stat.Ann. § 9:2800.52. "Damage" is defined as "damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that [a redhibition cause of action] does not allow recovery for such damage or economic loss." La.Rev.Stat.Ann. § 9:2800.53(5). A "manufacturer" is defined as a "person or entity who is in the business of manufacturing a product for placement into trade or commerce."

La.Rev.Stat.Ann. § 9:2800.53(1).

The drafters of the LPLA sought to strictly delimit possible bases of liability for manufacturers. Consideration and passage of the Act came on the heels of the Louisiana Supreme Court's 1986 decision in *Halphen v. Johns-Manville Sales Corp.*, 484 So.2d 110 (La.1986), which expanded manufacturer liability to include strict liability for injuries caused by an "unreasonably dangerous per se" product. *See* John Kennedy, *A Primer on the Louisiana Products Liability Act*, 49 La.L.Rev. 565, 587 (1989) (hereinafter "Kennedy").[1] The LPLA therefore set out four distinct and exclusive theories of liability.[2] The sole exception to the exclusivity provisions under the LPLA is redhibition, which the Act expressly preserved. *See* Kennedy at 580.

The plain language and legislative history of the LPLA demonstrate the legislature's intent to make the Act and Louisiana redhibition law the sole vehicles for a suit against a manufacturer for damages arising from a defective product. In *In re Air Bag Products Liability Litigation*, 7 F.Supp.2d 792 (E.D. La. 1998), Judge Feldman held that plaintiffs, who brought "redhibition, breach of implied warranty of fitness for use, negligence per se . . . and 'other contract-related' theories" against automobile manufacturers, were barred by the LPLA's exclusivity provisions from asserting all but their redhibition claims. *Id.* at 800. In *Jefferson v. Lead Industries Ass'n, Inc.*, 930 F.Supp. 241 (E.D. La. 1996), Judge Vance held that plaintiffs,

---

[1] John Kennedy and Professor H. Alston Johnson III were the drafters of the LPLA. Kennedy at 565 n.a1.

[2] Under the LPLA, a manufacturer is liable for damages caused by an unreasonably dangerous product. The four kinds of unreasonably dangerous product are: (1) in construction or composition; (2) in design; (3) because an adequate warning about the product has not been provided; and (4) because it does not conform to an express warranty of the manufacturer about the product. La.Rev.Stat.Ann. §§ 9:2800.55-58.

who alleged "negligence, fraud by misrepresentation, market share liability, breach of implied warranty of fitness and civil conspiracy" against lead paint manufacturers, had failed to state a claim because of the LPLA's exclusivity provisions. *Id.* at 244. The court expansively read the LPLA's exclusivity provisions to hold that "[a] plaintiff may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in the LPLA." *Id.* at 244-45 citing *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir.1995). The Court finds the reasoning of these cases persuasive.

Plaintiffs' claim of breach of contract of fitness for ordinary use fails for an independent reason as well: it is subsumed by Louisiana redhibition law. Plaintiffs contend that La. Civ. Code art. 2524 provides that a breach of contract of fitness for ordinary use claim is distinct from a redhibition claim. Article 2524 provides that a buyer has a cause of action against a seller if an item sold is not fit for the buyer's intended use. Article 2524's Revision Comments discuss the relationship of the breach of contract claims with Louisiana redhibition law. Comment (b) reads as follows:

> Under this Article when the thing sold is not fit for its ordinary use, even though it is free from redhibitory defects, the buyer may seek dissolution of the sale and damages, or just damages, under the general rules of conventional obligations. The buyer's action in such a case is one for breach of contract and not the action arising from the warranty against redhibitory defects.

In the present case, it is undisputed that the motorcycles at issue were not free from defects. Comment (b) implies that a breach of contract of fitness for ordinary use claim is only an independent cause of action when an item is free from redhibitory defects. This proposition has consistently been endorsed by the courts. *See, e.g.*, *PPG Industries, Inc. v. Industrial Laminates Corp.*, 664 F.2d 1332, 1335 (5th Cir. 1982) ("[C]ourts in Louisiana have held

unequivocally that actions based on a breach of warranty against defects are to be brought in redhibition instead of as a breach of contract."). The Court therefore concludes that Plaintiffs' breach of contract of fitness for ordinary use action under La. Civ. Code art. 2524 is further precluded by their redhibition claim.

*C. Plaintiffs' Redhibition Claims*

Defendant moves to dismiss Plaintiffs' redhibition claims as well. Defendant bases its motion on two arguments. First, Defendant alleges that a defect must have manifested itself for a redhibition claim to succeed. Second, Defendant alleges that the Plaintiffs' claim that the defect diminished the value of the motorcycles is too speculative to support the redhibition claim. The Court disagrees with the Defendant on both points.

Louisiana redhibition law provides two definitions of a redhibitory defect. The less stringent of the two definitions provides in pertinent part:

> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price.

La. Civ. Code art. 2520.

Defendant argues that courts have interpreted this clause to require a defect to have manifested itself. Defendant cites to a string of cases to support its contention that a manifested defect is a *prima facie* element of a redhibition claim. When read in context, each of these cases supports the opposite contention: that a plaintiff bears a minimal pleading burden in a redhibition claim. *See, e.g.*, *Mid City Finance Co. v. Coleman*, 232 So.2d 918, 920 (La.App. 1970) (characterizing the plaintiff's burden of proof as a showing of "unsatisfactory performance"); *Robinett v. Sears, Roebuck and Co.*, 485 So. 2d 953, 954 (La.App. 1986) (holding that a

redhibitory defect exists if a product is not fit for its intended use). Plaintiffs cite to *In re Ford Motor Company Bronco II Products Liability Litigation*, 1995 WL 491155 (E.D. La. 1995), in which plaintiffs sued on a sports-utility vehicle's propensity to roll over. The court held that although none of the plaintiffs had alleged that the vehicles had in fact rolled over, the mere propensity to do so was a sufficient allegation of a redhibitory defect.

Defendant also overstates the Plaintiffs' burden of alleging harm. Defendant argues that "diminished value" is too speculative to support a redhibition claim, and that Plaintiffs are instead required to point to concrete harms that they have suffered. The broad language of La. Civ. Code art. 2520 undermines Defendant's argument. For a defect to be redhibitory, Plaintiffs need only allege that they would have purchased the motorcycles but for a lesser price. *See In re Ford Motor Company Bronco II*, 1995 WL 491155 at 9.

*D. Plaintiffs' LPLA Claims*

Defendant moves to dismiss Plaintiffs' products liability claims under the LPLA. Defendant argues that Plaintiffs' claim fails to satisfy either of the necessary elements required by the LPLA. First, Defendant asserts that Plaintiffs' have failed to demonstrate that their damages were proximately caused by an unreasonably dangerous characteristic of the motorcycles. Second, Defendant asserts that Plaintiffs' damages did not arise from reasonably anticipated use of the motorcycles. The Court agrees with the Defendant on both points.

A plaintiff bears a two-tiered burden in pleading a LPLA claim. The plaintiff must show that: "(1) his damages were proximately caused by a characteristic of the product that renders it unreasonably dangerous, and (2) his damages arose from a reasonably anticipated use of the product." *Kampen v. American Isuzu Motors, Inc.*, 157 F.3d 306, 309 (5th Cir. 1998) citing

La.Rev.Stat.Ann. § 9:2800.54(D). A product can be "unreasonably dangerous" in four ways: "(1) in construction or composition; (2) in design; (3) because of an inadequate warning; or, (4) because of nonconformity to an express warranty." *Kampen*, 157 F.3d at 309 citing La.Rev.Stat.Ann. § 9:2800.54(B).

In the present case, Plaintiffs can allege that their harms were caused either: (1) by the motorcycle's defect; or (2) by the tardiness of the recall. Both approaches are flawed. Under the first approach, Plaintiffs' damages (loss of use, *et cetera*) were neither proximately caused by a characteristic of the product nor arose from a reasonably anticipated use of the product. The defect may have been a cause in fact of the Plaintiffs damages, but the damages themselves were proximately caused by the alleged delay in the return of the motorcycles to their owners. The damages also did not arise from reasonably anticipated use of the product; rather, the damages arose from *non*-use of the product. The second approach fails even more fundamentally: nothing about the recall's defect was unreasonably dangerous.[3]

The legislative history of the LPLA and the jurisprudence of Louisiana courts with regard to products liability against manufacturers further undermine Plaintiffs' LPLA claim. As outlined in the section above, the legislative history of the LPLA demonstrates a legislative intent to clearly outline the elements of a products liability cause of action against a manufacturer. *See generally* Kennedy. Moreover, courts have demonstrated that actions involving a latent defect sound in redhibition rather than in products liability. *Compare In re Ford Motor Company Bronco II Products Liability Litigation*, 1995 WL 491155 (E.D. La. 1995)

---

[3] As discussed in the following section, an allegation that a recall was conducted improperly is likely preempted by the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30101 *et seq*.

(Sear, J.) (holding that plaintiffs, owners of sports-utility vehicle with propensity to roll over, had stated a claim in redhibition even though none of their vehicles had actually rolled over) *with Willett v. Baxter Intern., Inc.*, 929 F.2d 1094 (5th Cir. 1991) (Wisdom, J.) (granting summary judgment to defendants in LPLA suit by plaintiffs, recipients of heart valve transplants with a potential but unrealized defect).

*E. Safety Act's Preclusive Effect*

Defendant moves to dismiss all of Plaintiffs' claims based on the preemptive effect of the Safety Act. Defendant argues that any state suit concerning the administration of a motor vehicle recall conflicts with the Safety Act and is precluded. The Court agrees that the Safety Act has some preemptive and preclusive effect, but holds that the preclusive effect does not apply to Plaintiffs' state redhibition claims.

The purpose of the Safety Act is to prescribe uniform motor vehicle safety standards. 49 U.S.C. § 30101. The Safety Act provides a detailed method of commencing, administering, and overseeing recalls if a motor vehicle fails to satisfy enumerated safety requirements. 49 U.S.C. §§ 30118-30120. The Safety Act provides remedies for owners of vehicles subject to recall and provides for an administrative procedure for interested parties to criticize or comment on the recall process. *Id.* The Safety Act expressly preempts conflicting state regulations, but preserves a manufacturer's common law liability. 49 U.S.C. § 30103.

The Safety Act's express savings clause undermines Defendant's argument that Plaintiffs' common law redhibition claim is precluded. Defendant relies on cases such as *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861 (2000), and *Lilly v. Ford Motor Co.*, 2002 WL 84603 (N.D. Ill. 2002) in which courts held that a state action conflicted with the Safety Act.

*Geier* and *Lilly*, however, were cases concerning state actions in direct conflict with the Safety Act. *Geier*, 529 U.S. at 874 ("[A] common law "no airbag" action like the one before us actually conflicts with . . . FMVSS 208 [which] sets a minimum airbag standard."); *Lilly*, 2002 WL 84603 at 5 ("A nationwide court-ordered recall would conflict directly with and frustrate the Safety Act."). Instead, the Safety Act's express savings clause contemplates that manufacturers remain liable at common law as long as there is no direct conflict. *See Sprietsma v. Mercury Marine*, 537 U.S. 51 (2002) (quoting *Geier*, 529 U.S. at 868 ("[The] saving clause assumes that there are some significant number of common-law liability cases to save and the language of the preemption provision permits a narrow reading that excludes common-law actions.")). *See also Martin v. Ford Motor Co.*, 914 F.Supp. 1449, 1454 (S.D. Tex. 1996) citing *Perry v. Mercedes Benz of North America*, 957 F.2d 1257 (5th Cir. 1995) ("[S]tate causes of action not falling afoul of [direct conflict] may be brought against automobile manufacturers despite the enactment of the Safety Act and federal safety regulations.").

Plaintiffs' redhibition claim does not directly conflict with the principles underlying the Safety Act. The purpose of the Safety Act is to establish uniform guidelines for motor vehicle safety and to ensure that recalls are properly ordered and administered. A redhibition claim does not conflict or undermine either of those purposes. Instead, Plaintiffs' redhibition claim falls squarely within the savings clause anticipated by Congress in 49 U.S.C. § 30103(e).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiffs' negligent repair, breach of contract, and LPLA claims are GRANTED. Defendant's motion to dismiss Plaintiffs' redhibition claim is DENIED.

New Orleans, Louisiana, this __4th__ day of August, 2005.

_____
UNITED STATES DISTRICT JUDGE